# EXHIBIT 11

# PharMerica Counterclaim

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PITTSBURG SNF LLC, BALCH SPRINGS SNF LLC, BAY OAKS SNF LLC, BELLMIRE SNF LLC, BENBROOK SNF LLC, BIRMINGHAM SNF LLC, BLUEBONNET SNF LLC, CLARKSVILLE SNF LLC, CLYDE SNF LLC, COLONIAL MANOR SNF LLC, COLONIAL MANOR NH SNF LLC, COURTYARD SNF LLC, CROWELL SNF LLC, EL PASO SNF LLC, GARDENDALE SNF LLC, GREENVILLE SNF LLC, HENDERSON SNF LLC, LUBBOCK NH SNF LLC, MCALLEN SNF LLC, MESQUITE NH SNF LLC, MONTERREY SNF LLC, MUNDAY SNF LLC, PALO PINTO SNF LLC, PARK VIEW SNF LLC, PRAIRIE HOUSE SNF LLC, RIVER OAKS SNF LLC, ROSENBERG SNF LLC, SANTE FE SNF LLC, SOUTHEAST SNF LLC, STONEBROOK MANOR SNF LLC, SULPHUR SPRINGS SNF LLC, PINECREST SNF LLC, RENAISSANCE SNF LLC, VERNON SNF LLC, VISTA HILLS SNF LLC, WEDGEWOOD SNF LLC, AND WHITE SETTLEMENT SNF LLC, | § § § § § § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | § | |
| v. | § § | CIVIL ACTION NO. 2:10-CV-363 |
| PHARMERICA EAST, INC., as successor in interest to PHARMASTER, L.P., | § § § | |
| Defendant and Third-Party Plaintiff, | § § § § § | |
| v. | § § | |
| PHARMASTER, L.P., PHARMASTER GP, LLC, PETER LICARI, MICHAEL D'ARCANGELO, WILLIAM D. JACOBSON, and DAVID C. MILLING, | § § § § § | |
| Third-Party Defendants. | § | |

**<u>PHARMERICA EAST, LLC'S FIRST AMENDED COUNTERCLAIM</u>**

The plaintiff-in-counterclaim, PharMerica East, LLC ("PharMerica East"), hereby alleges against the defendants-in-counterclaim, the plaintiffs,[1] as follows:

## PARTIES

1. Upon information and belief, the Plaintiffs are Texas limited liability companies, whose members reside in the State of New York, and operate in the State of Texas.

2. PharMerica East is a Delaware corporation with its principal place of business in Louisville, Kentucky.

## JURISDICTION AND VENUE

3. This Court has ancillary jurisdiction over PharMerica East's counterclaims to the extent that the Court determines that it has subject matter jurisdiction.

4. The Plaintiffs waived any objections to this venue by filing their Third Amended Complaint in this district.

## FACTUAL BACKGROUND

### Pharmacy and Nursing Home Transactions

5. PharMaster, L.P. ("PharMaster") and each of the Plaintiffs' predecessors (the "Nursing Homes") executed Pharmacy Services Agreements in early 2006 for the provision of pharmacy-related goods and services by PharMaster to the Nursing Homes.

---

[1] The defendants-in-counterclaim to this matter are Pittsburg SNF LLC, Balch Springs SNF LLC, Bay Oaks SNF LLC, Bellmire SNF LLC, Benbrook SNF LLC, Birmingham SNF LLC, Bluebonnet SNF LLC, Clarksville SNF LLC, Clyde SNF LLC, Colonial Manor SNF LLC, Colonial Manor NH SNF LLC, Courtyard SNF LLC, Crowell SNF LLC, El Paso SNF LLC, Gardendale SNF LLC, Greenville SNF LLC, Henderson SNF LLC, Lubbock NH SNF LLC, McAllen SNF LLC, Mesquite NH SNF LLC, Monterrey SNF LLC, Munday SNF LLC, Palo Pinto SNF LLC, Park View SNF LLC, Prairie House SNF LLC, River Oaks SNF LLC, Rosenberg SNF LLC, Sante Fe SNF LLC, Southeast SNF LLC, Stonebrook Manor SNF LLC, Sulphur Springs SNF LLC, Pinecrest SNF LLC, Renaissance SNF LLC, Vernon SNF LLC, Vista Hills SNF LLC, Wedgewood SNF LLC, and White Settlement SNF LLC (collectively, the "Plaintiffs").

6. On or about January 1, 2008, PharMaster and the Nursing Homes revised the Pharmacy Services Agreements, which amendments extended the term length of the Pharmacy Services Agreements.

7. PharMerica East had no involvement with the January 2008 revisions to the Pharmacy Services Agreements.

8. In or about May 2008, PharMerica East began negotiating with PharMaster to purchase the assets of PharMaster.

9. On or about October 20, 2008, PharMaster and the Nursing Homes again revised the Pharmacy Services Agreements.

10. The October 2008 revisions did not alter the substantive terms of the Pharmacy Services Agreements, including the term length, pricing, or liquidated damages provisions. The revisions also did not alter a patient's right to choose who would provide his or her pharmacy services. Rather, the October 2008 revisions to the Pharmacy Services Agreements made changes in form, or boiler plate provisions.

11. Subsequently, on or about October 30, 2008, PharMerica East acquired the assets of PharMaster, including its interest in the pre-existing Pharmacy Services Agreements, via an Asset Purchase Agreement.

12. In or about February 2009, Lou Scheiner, a principal of the Plaintiffs, and Ron Ostroff, a high level representative of the Plaintiffs, met with Peter Licari and Michael D'Arcangelo, the owners of the Nursing Homes, to discuss purchasing the Nursing Homes.

13. During this meeting, Mr. Licari and/or Mr. D'Arcangelo told Mr. Scheiner and Mr. Ostroff that any purchase of the Nursing Homes would require assumption of the Pharmacy Services Agreements and that the Pharmacy Services Agreements had a ten-year term.

3

14. On or about June 18, 2009, the Plaintiffs received a copy of the Pharmacy Services Agreements.

15. On or about December 1, 2009, the Plaintiffs consummated their purchase of the Nursing Homes (the "Nursing Home Acquisition").

16. As part of the Nursing Home Acquisition, the Plaintiffs knowingly assumed the Pharmacy Services Agreements via Assignment and Assumption Agreements between the Plaintiffs and the Nursing Homes, to which PharMerica East is a third-party beneficiary.

17. In the Assignment and Assumption Agreements, the Plaintiffs agreed to use PharMerica East as the preferred and exclusive provider of all pharmaceuticals to the Plaintiffs and their residents in accordance with the Pharmacy Services Agreements. The Plaintiffs further acknowledged that PharMerica East was a third-party beneficiary of the Assignment and Assumption Agreements.

18. PharMerica East and the Plaintiffs are the current parties to the Pharmacy Services Agreements.

### Pharmacy Services Agreement Terms

19. By assuming the Pharmacy Services Agreements, the Plaintiffs agreed that PharMerica East would be their exclusive provider of pharmacy goods and services for the duration of the contractual term.

20. The initial term of the Pharmacy Services Agreements expires on December 31, 2017, with three optional additional three-year renewal terms.

21. While the Pharmacy Services Agreements require PharMerica East to undertake reasonable efforts to secure reimbursement from third parties for the goods and services it

4

provides to the Plaintiffs' residents, the Plaintiffs agreed to bear the costs of any goods or services for which PharMerica East is unable to secure payment.

22. In the event that the Plaintiffs dispute any billing charges, they agreed in Section 4(f) of the Pharmacy Services Agreements to adhere to the following procedures:

> Notwithstanding any provisions in the Agreement contrary, all billing disputes shall be governed by this Section 4 . . . . (1) If [the Plaintiff] disputes any statement charge, [it] shall: (i) provide written notice to [PharMerica East] of the dispute before the payment due date and include documentation refuting the charge in dispute; and (ii) pay by the payment due date all undisputed amounts on the statement. A written notice and documentation must be provided for each individual disputed charge. Any charge disputed by [the Plaintiff] that is not presented to [PharMerica East] in accordance with this Subsection (4)(f)(1) shall be waived. [the Plaintiff and PharMerica East] agree that TIME IS OF THE ESSENCE under this Subsection (4)(f)(1). [The Plaintiff] shall not withhold payment of any amount for which there is not a reasonable basis for dispute.

23. In the event that the Plaintiffs decide to terminate the Pharmacy Services Agreements, they are required to follow the procedures in the Section 5 for doing so, including procedures for giving PharMerica East proper written notice and an opportunity to cure any material failures to perform.

24. In the event the parties are unable to correct an alleged failure or otherwise resolve their disputes, they are not permitted to unilaterally terminate the Pharmacy Services Agreements. Rather, they must submit any unresolved disputes to mandatory arbitration.

25. Pending resolution of any disputes with PharMerica East, the Plaintiffs agreed to "continue to provide services and honor all other commitments under [the] Agreement."

26. Pursuant to Section 15(a) of the Pharmacy Services Agreements, the agreements "shall be binding upon and inure to the benefit of both parties and their successors and assigns," and:

> Any sale, lease, assignment, delegation or transfer of all or any portion of Customer's or Pharmacy's management, operations, facilities, assets, stock (or

5

any equity) of business to any person, corporation or entity, including any transaction collectively, a "Transfer" and the other party to the Transfer being the "Transferee"), will not constitute grounds for termination or modification of this Agreement by Customer or Pharmacy. In addition, Customer (and each successor and assign of Customer) will cause, and make as a requirement of any Transfer, each Transferee to assume in writing all obligations of customer under this Agreement and utilize Pharmacy and its successors and assigns as the preferred and exclusive provider of all pharmaceuticals to the Customer and its residents ("Preferred Provider").

27. Pursuant to Section 15(b), the Plaintiffs agreed to pay PharMerica East liquidated damages for any violations of Section 15(a) of the Pharmacy Services Agreements: "If Customer fails to comply with Section 15(a), Pharmacy will be entitled to recover immediately from Customer as liquidated damages, and not as a penalty, a[n] amount equal to $40 per each licensed bed in the Customer multiplied by the remaining number of months in the initial term (or f[r]action thereof)."

28. Section 18(a) of the Pharmacy Services Agreement provides: "In all matters relating to this Agreement and its performance, the parties shall act in good faith."

29. Finally, Section 18(j) provides that "[i]f either party brings a lawsuit to enforce any of the terms or conditions of this Agreement, the prevailing party in the lawsuit shall be entitled to recover costs and attorneys' fees in addition to other relief to which it may be entitled."

### The Plaintiffs' Bad-Faith Allegations of Illegality
### Regarding the Pharmacy Services Agreements

30. On or about September 14, 2010, the Plaintiffs filed a Complaint in the Eastern District of Texas, which subsequently was amended several times (the "Lawsuit").

31. In the Lawsuit, the Plaintiffs seek a declaratory judgment declaring the Pharmacy Services Agreements unenforceable and assert claims for breach of contract/breach of warranty relating to illegal conduct.

6

32.     The principals of the Plaintiffs and/or others involved in the negotiations on their behalf were sophisticated business people with experience in the healthcare industry and/or the Anti-Kickback Statute in particular.

33.     Nevertheless, at no time prior to the filing of the Lawsuit did the Plaintiffs claim that the Pharmacy Services Agreements were illegal or otherwise unenforceable.

34.     Nor did the Plaintiffs ever demand arbitration of their claims of illegality or breach of contract/breach warranty relating to illegal conduct.

35.     Rather, the Plaintiffs, who simply want more favorable contract terms than those they agreed to accept when assuming the Pharmacy Services Agreements, filed the Lawsuit as leverage in an effort to force PharMerica East to re-negotiate the Pharmacy Services Agreements.

36.     The Plaintiffs have admitted as much to third-parties. Specifically, on or about December 14, 2010, Mr. Scheiner telephoned Mr. D'Arcangelo to discuss an unrelated matter.

37.     In that telephone conversation, Mr. D'Arcangelo inquired about the Lawsuit, and Mr. Scheiner replied, among other things, that the Pharmacy Services Agreements were "legal" and the Lawsuit was "a sham lawsuit to get PharMerica to negotiate."

**The Plaintiffs' Failures to Comply with the Pharmacy Services Agreements**

38.     The Plaintiffs also have asserted a claim for breach of contract for failure to perform under the Pharmacy Services Agreements based on alleged billing disputes.

39.     However, at no time prior to asserting this claim did the Plaintiffs provide PharMerica East with proper written notice of any alleged billing disputes or follow the billing dispute procedures required by the Pharmacy Services Agreements.

40. Nor did the Plaintiffs submit their alleged billing disputes to mandatory arbitration as required by the Pharmacy Services Agreements.

41. Further, on April 9, 2012, Plaintiff Bellmire SNF LLC ("Bellmire") notified PharMerica East that it was terminating its Pharmacy Services Agreement effective April 15, 2012, purportedly because it ceased operations.

42. Bellmire, however, appears simply to have moved to a nearby upgraded facility.

43. Before Bellmire's termination even became effective, it executed a pharmacy services agreement with a new pharmacy, National Pharmacy of Texas, LLC.

44. Additionally, on May 9, 2102, Plaintiff Mesquite NH SNF LLC ("Mesquite") terminated its Pharmacy Services Agreement with PharMerica East, effective immediately.

45. As grounds for termination, Mesquite alleges that PharMerica East breached the Pharmacy Services Agreement by failing to make reasonable commercial efforts to secure reimbursement from third-party payers prior to billing the Plaintiffs for certain goods and services, which is the same alleged dispute that forms the basis of the Plaintiffs' claim breach of contract for failure to perform.

46. PharMerica East responded to Bellmire's and Mesquite's termination notices and advised that their terminations constituted breaches of the Pharmacy Services Agreements.

47. On May 24, 2012, PharMerica East sent a written notice to each of the Plaintiffs demanding arbitration of the Plaintiffs' alleged billing disputes, PharMerica East's related counterclaims, and Bellmire's and Mesquite's improper terminations of their Pharmacy Services Agreements.[2]

---

[2] PharMerica East maintains that the Plaintiffs' breach of contract claim based on alleged billing disputes is subject to mandatory arbitration. *See* PharMerica East's Motion to Dismiss Plaintiffs' Third Amended Complaint and Compel Arbitration of Claim Three [Dkt. No. 120] ("Motion to

8

## Count I
## Declaratory Judgment
*(against all Plaintiffs)*

48. PharMerica East realleges and incorporates by reference paragraphs 1 through 47, inclusive.

49. An actual controversy exists between the Plaintiffs and PharMerica East concerning the legality and/or enforceability of the Pharmacy Services Agreements.

50. Resolution of this dispute by entry of a judgment concerning the validity of the Pharmacy Services Agreements is necessary and appropriate under the existing facts and circumstances.

51. Judgment will serve a useful purpose in clarifying and settling the legal relationship between PharMerica East and the Plaintiffs.

52. Accordingly, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, PharMerica East requests a declaratory judgment that the Pharmacy Services Agreements are valid, legal, and enforceable agreements to which the Plaintiffs are bound.

53. PharMerica East similarly requests a declaratory judgment that the Assignment and Assumption Agreements between the Plaintiffs and the Nursing Homes are valid, legal, and enforceable agreements to which the Plaintiffs are bound.

---

Compel Arbitration"). It similarly is PharMerica East's position that Counts III, IV, and V herein also are the proper subject of arbitration. Specifically, it is PharMerica East's position that if the Court allows the Motion to Compel Arbitration, Counts III, IV and V also should be transferred to arbitration. Where the Motion to Compel Arbitration remains pending, however, out of an abundance of caution and in an effort to comply with the Court's July 20, 2012 deadline for amending pleadings without leave of the Court, PharMerica East asserts Counts III, IV and V of this First Amended Counterclaim to preserve its rights to do so in the event the Motion to Compel Arbitration is denied. By doing so, PharMerica East does not in anyway waive its right to arbitrate Claim Three of the Plaintiffs Third Amended Complaint or Counts III, IV, or V of PharMerica East's First Amended Counterclaim.

## Count II
### Breach of Contract for Failure to Act in Good Faith
*(against all Plaintiffs)*

54. PharMerica East realleges and incorporates by reference paragraphs 1 through 53, inclusive.

55. The Plaintiffs failed to perform their obligations to PharMerica East under the Pharmacy Services Agreements. Specifically, the Plaintiffs failed to act in good faith in matters relating to the Pharmacy Services Agreements.

56. Such failures constitute a breach of the Pharmacy Services Agreements.

57. As a result of the Plaintiffs' breaches, PharMerica East has suffered and will continue to suffer actual damages for which the Plaintiffs are liable to PharMerica East.

58. PharMerica East has performed all required obligations under the Pharmacy Services Agreements.

## Count III
### Breach of Contract Related to Alleged Billing Disputes
*(against all Plaintiffs)*

59. PharMerica East realleges and incorporates by reference paragraphs 1 through 58, inclusive.

60. The Plaintiffs failed to perform their obligations to PharMerica East under the Pharmacy Services Agreements relating to their alleged billing disputes.

61. Such failures constitute a breach of the Pharmacy Services Agreements.

62. As a result of the Plaintiffs' breaches, PharMerica East has suffered and will continue to suffer actual damages for which the Plaintiffs are liable to PharMerica East.

63. PharMerica East has performed all required obligations under the Pharmacy Services Agreements.

## Count IV
### Breach of Contract for Improper Termination
*(against Bellmire)*

64. PharMerica East realleges and incorporates by reference paragraphs 1 through 63, inclusive.

65. Bellmire has failed to perform its obligations to PharMerica East under its Pharmacy Services Agreement and/or Assignment and Assumption Agreement.

66. Such failures constitute a breach of its Pharmacy Services Agreement and/or Assignment and Assumption Agreement.

67. As a result of Bellmire's breach, PharMerica East has suffered and will continue to suffer actual damages for which Bellmire is liable to PharMerica East.

68. As a result of Bellmire's breach, PharMercia East is entitled to recover liquidated damages pursuant to the Pharmacy Services Agreement.

69. PharMerica East has performed all required obligations under the Pharmacy Services Agreement.

## Count V
### Breach of Contract for Improper Termination
*(against Mesquite)*

70. PharMerica East realleges and incorporates by reference paragraphs 1 through 69, inclusive.

71. Mesquite has failed to perform its obligations to PharMerica East under its Pharmacy Services Agreement and/or Assignment and Assumption Agreement.

72. Such failures constitute a breach of its Pharmacy Services Agreement and/or Assignment and Assumption Agreement.

11

73. As a result of Mesquite's breach, PharMerica East has suffered and will continue to suffer actual damages for which Mesquite is liable to PharMerica East.

74. PharMerica East has performed all required obligations under the Pharmacy Services Agreement.

### Count VI
### Attorneys' Fees
### *(against all Plaintiffs)*

75. PharMerica East realleges and incorporates by reference paragraphs 1 through 74, inclusive.

76. Because of the acts and/or omissions described above, PharMerica East has been forced to employ the undersigned council to enforce the Pharmacy Services Agreements. As a result, PharMerica East is entitled to recover reasonable attorneys' fees incurred in this action pursuant to, at a minimum, the terms of the Pharmacy Services Agreements.

### **PRAYER FOR RELIEF**

WHEREFORE, PharMerica East prays that this Court:

a. Enter a judgment declaring that the Pharmacy Services Agreements and the Assignment and Assumption Agreements are legal and enforceable;

b. Enter a judgment against the Plaintiffs on all of PharMerica East's claims against them.

c. Enter a judgment against the Plaintiffs for all sums that may be recovered by PharMerica East, including its reasonable attorneys' fees and costs, as allowed by law;

d. Award PharMerica East its costs and expenses, including reasonable attorneys' fees; and

e. Grant PharMerica East such other and further relief that this Court deems just and proper.

## JURY DEMAND

PharMerica East demands a jury trial on all issues so triable.


Dated:  July 20, 2012                    Respectfully Submitted,

                                         McKOOL SMITH, P.C.

                                         */s/ Sam Baxter*
                                         Samuel F. Baxter
                                         TX State Bar No. 01938000
                                         *sbaxter@mckoolsmith.com*
                                         MCKOOL SMITH, P.C.
                                         104 E. Houston St., Suite 300
                                         Marshall, TX 75670
                                         Telephone: (903) 923-9000
                                         Facsimile: (903) 923-9099

                                         J.D. Smeallie (*admitted pro hac vice*)
                                         *jd.smeallie@hklaw.com*
                                         Elizabeth M. Mitchell (*admitted pro hac vice*)
                                         *elizabeth.mitchell@hklaw.com*
                                         HOLLAND & KNIGHT
                                         10 St. James Avenue, 11th Floor
                                         Boston, MA 021116
                                         Telephone: (617) 573-5812
                                         Facsimile: (617) 523-6850

                                         ATTORNEYS FOR PHARMERICA EAST LLC

## CERTIFICATE OF SERVICE

    I hereby certify a copy of the foregoing was electronically filed in compliance with Local Rule CV-5(a). As such, on July 20, 2012, this First Amended Counterclaim was served on all counsel who are deemed to have consented to electronic service.

                                                                     */s/ Sam Baxter*  
                                                                     Samuel F. Baxter

#11391730_v1