# EXHIBIT 12

# Memorandum of Understanding

## MEMORANDUM OF UNDERSTANDING
## OUTLINE
### October 7, 2012

Plaintiffs, Defendant and Third Party Defendants, subject to compliance with all applicable laws, and without admitting liability desire to settle the matters raised in the Lawsuit pending in the United States District Court for the Eastern District of Texas, Marshall Division, Civil Action No. 2:10-cv-363(JRG) (the Action) including without limitation attorney fees and costs as follows:

1. The parties will negotiate in good faith and execute a final settlement agreement (the "Final Settlement Agreement") which is consistent with the terms and conditions set forth herein.

2. The existing Pharmacy Services Agreements ("Existing PSAs") shall be terminated effective no later than December 31, 2012 and 34 of the Plaintiffs (which represents all of the Plaintiffs nursing homes or facilities currently receiving goods and services from PharMerica plus Mesquite NH SNF LLC) shall enter into new Pharmacy Services Agreements ("PSAs") with PharMerica which PSAs shall expire no later than the date that the Existing PSAs were to expire. The form of the Existing PSAs shall be utilized in connection with creating the PSAs and the existing pricing schedules shall be used except to the extent that modification of either the forms or pricing has been agreed to herein or in the Final Settlement Agreement. In no event shall any term or pricing schedule of the PSAs be less favorable than the corresponding term or pricing schedule of the Existing PSAs.

3. Quarterly Billing Credit

    PharMerica shall pay Plaintiffs in the aggregate the sum of $3,050,000 in the form of a discount or a credit during the term of the PSAs, the details of which will be negotiated as part of the Final Settlement Agreement, but shall be applied no less frequently than quarterly and shall commence January 1, 2012. The discount or credit shall also be legal, transparent, and verifiable by the Plaintiffs. Finally the discount or credit shall be transferable from one Plaintiff to another or all the others in the event that some of the Plaintiffs cease to utilize PharMerica during the term; provided, however, that in the event that greater than 15% of the Plaintiffs beds plus 1 nursing home cease to the utilize PharMerica's services during the term because they are sold to an unrelated third party (i.e., no common ownership), the credit or discount from the facilities sold in excess of 15% plus one facility shall not be transferred to the remaining Plaintiffs. In addition, the credit or discount shall not be transferred for any Plaintiff that ceases doing business and an entity with common ownership or management should continue to operate at the same location as the

1

Plaintiff operated as of the date of this Memorandum of Understanding. In the event that for any reason the discount or credit realized by the Plaintiffs in the aggregate is less than $600,000 in a year, except in the event that it is reduced by an overage from the prior year, the difference between the sum of $600,000 and the discount or credit shall be paid by PharMerica in cash to the Plaintiffs. The same process shall be applied if the Aggregate discount or credit is less than $3,050,000 by the end of the PSAs term. In the event that the Parties cannot agree to a methodology for the credits or discount on or before October 31, 2012, the Parties shall expeditiously arbitrate the issue and shall present to the arbitrator each of the Party's proposals to resolve the remaining issues. If the arbitrator finds that both proposals are in compliance with this Article 3, the arbitrator shall select the PharMerica proposal and the Parties shall split the costs of the arbitration, but bear their own legal costs and expenses. If the arbitrator finds that one of the 2 proposals are not in compliance with this Article 3, the Arbitrator shall be required to pick the proposal that is in compliance with this Article 3, and if (i) the PharMerica proposal is not selected, PharMerica shall pay the costs of the arbitration, but the Parties shall bear their own legal costs and expenses and (ii) if the PharMerica proposal is selected, Parties shall split the costs of the arbitration, but bear their own legal costs and expenses.

4. Reinstatement of Facility

PharMerica will release the Plaintiff which was once located in Bowie Texas, as well as the current operator of a Bowie Facility, and Mesquite NH SNF LLC from any and all claims relating to their having ceased using PharMerica. Mesquite NH SNF LLC will resume utilizing PharMerica no later than the earliest it is able to terminate its current pharmacy services agreement with its third party supplier without breaching the contract. The parties agree that such termination notice will be issued on the date that the Final Settlement Agreement is executed to be effective within 60 days following the date of the termination notice. Upon the effective date of such termination, the Mesquite NH SNF LLC PSA, as PSA is defined above, with PharMerica shall become effective. The Plaintiffs shall submit to the mediator the current third party Mesquite NH SNF LLC pharmacy services agreement.

5. Liquidated Damages

The liquidated damages provision contained within the PSAs will continue to apply with full force and effect, except that if all of the facilities are transferred, then 10% of the total beds involved plus one home in its entirety will not be subject to liquidated or any other damages or penalties. In addition, in the event of assignment and assumption, the Plaintiff(s)

2

assigning shall be released from all liability from the effective date of the assignment forward.

6. Third Party Defendants' Note

The Third Party Defendants will immediately withdraw all foreclosure notices and actions (the "Foreclosure Action") and all notices of default and relinquish any claims for default interest penalties or fees and all other claims relating to the Note except for payment of interest on the Note to the date of the Final Settlement Agreement and interest only on the remaining principal balance of the Note and the payment of the remaining principal balance of the Note at maturity. Third Party Defendants shall also withdraw and relinquish any claims which were asserted in the Foreclosure Action. Finally, Third Party Defendants shall also pay Plaintiffs individually and in the aggregate the sum of $4,000,000 or provide some other discount or credit which has the same impact and is more favorable to the Parties. In lieu of paying the same in cash, Third Party Defendants may assign $4,000,000 of the principal balance of the Note to an entity designated by the Plaintiffs and also assign such entity corresponding collateral. Upon final payment of the remaining portion of the Note retained by the Third Party Defendants and all unpaid interest thereon, the Third Party Defendants shall assign the remaining collateral securing payment thereof to such entity.

7. Billing Issues

The Parties agree that PharMerica, without additional notice as may be set forth in the PSAs, is required to bill accurately based upon daily census information provided to it by the Plaintiffs as shall be required by the PSAs. Prior to December 31, 2012, the Defendants and Plaintiffs will mutually agree upon a census reporting methodology to help PharMerica to be successful in picking up and billing from daily payor source information provided by Plaintiffs and the methodology to allow verification of the bills by the Plaintiffs. Starting on the 6th month following the date of the execution of the Final Settlement Agreement, and no less than every 12 months thereafter, Plaintiffs shall have the right to audit PharMerica's billings for the prior 12 months. The Parties shall mutually agree to the selection of an independent LTC pharmacy billing expert (the "Expert")that shall conduct a full review of charges to determine whether PharMerica billed the Facilities as required by the PSA. The parties shall reasonably cooperate with the audit firm. The results of the Expert for any findings shall be binding on both parties. Notwithstanding the foregoing, if the expert was not able to look at any financial issue, such issue shall be left unresolved until a methodology for verification can be established and utilized. PharMerica shall pay for the

3

complete cost of the Expert's work for the first six month period audit and for any audit thereafter where the billing rate of error exceeds 2% to the detriment of the Facilities in the aggregate. Additionally, in the event that the error rate exceeds 5% for any audit the audits shall increase in frequency to every 6 months until the error rate no longer exceeds 2%, at which time the frequency shall revert to annually. In addition, if following any audit there is a billing error rate of 10% or more, the audit shall increase in frequency to every month until the error rate no longer exceeds 2%, at which time the frequency will revert to annually.

Any adjustments required by the audit shall be made within 5 business days. The Parties shall also discuss and implement a plan to minimize delivery fees, encourage the use of multi-source generics and otherwise reduce cost without compromising service to, and the health of, the residents. One of the Third Party Defendants (Bill Jacobson, formerly head of operations of both the Plaintiffs' Texas Nursing Homes and Defendants' acquired PharMaster Facility) will, upon the Parties' request work with their designees to resolve these billing issues. The cost of Bill Jacobson's efforts shall be paid by the Third Party Defendants.

8. IV Charges

For those IV Services on Schedule A-4, Table 1 of Existing PSAs where the price is $55 a day, PharMerica will lower the price to $50 a day; provided, however, that when the discount equals $10,000 per year, the price shall revert to $55 a day.

9. Facility Closings

Except as otherwise set forth herein, in the event that any facility closes or any Plaintiff ceases to own or operate a nursing home the Defendants shall not be entitled to liquidated damages or any other damages or penalties and the remaining credit or discount which would have gone to that particular Plaintiff shall be transferred to the remaining Plaintiffs. Notwithstanding the foregoing, should any Plaintiff cease doing business and an entity with common ownership or management should continue to operate at the same location as the Plaintiff operated at the time this settlement was reached and such new entity does not assume the relevant PSA for the remainder of its term, then the liquidated damage provision shall apply.

4

10. <u>Contract Bidding</u>

    At the end of the PSA's term, if the Plaintiffs' bid out their pharmacy business, they will offer the Defendants the opportunity to participate in the process but shall not be obligated to select the Defendants.

11. <u>Compliance with All Laws</u>

    Each party hereto represents that to the best of its knowledge the PSAs are in compliance with all applicable laws and regulations and PharMerica further represents that the pricing contained within the PSAs (taking into account the discount and/or credits) are also is in compliance with all applicable laws and regulations.

12. <u>Cessation of All Actions</u>

    In anticipation of the time it will take to develop the Final Settlement Agreement (which will include mutual releases), the Parties below will agree that acceptance of this Memorandum of Understanding will result in a joint notification to the court and all other involved agencies to stop all pending actions in connection with the Action between and among all the Parties (Plaintiffs, Defendants' and Third Party Defendants), including, but not limited to the action regarding the termination of the PSA of the two Texas nursing homes, and the Foreclosure Proceeding on five of the Plaintiffs' nursing facilities.

13. <u>Mediation and Dismissal Of Action.</u>

    This Memorandum of Understanding shall be submitted to the Mediator who shall upon request of the Parties make himself available to assist the Parties in drafting of the Final Settlement Agreement. Following execution of the Final Settlement Agreement by all the Parties, the Action shall be dismissed with prejudice.

    [Page Intentionally Left Blank – Signatures On Next Page]

Agreed to by,

_____     10-12-12
Plaintiffs                             Date
TEXAS OPERATING MANAGEMENT
ZEVI KUHN, CFO

_____     _____
Defendants                             Date

_____     _____
Third Party Defendants                 Date

_____     _____
P&MB Limited Partnership               Date

Agreed to by,

_____    _____
Plaintiffs                                                                  Date

*[signature]*

_____    10/12/12
Defendants                                                                Date

_____    _____
Third Party Defendants                                          Date

_____    _____
P&MB Limited Partnership                                  Date

Agreed to by,

_____    _____
Plaintiffs                                                          Date

_____    _____
Defendants                                                       Date

*[signature]*    10/12/12
Third Party Defendants                                   Date

6