UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PHARMERICA CORPORATION, et al.,                                                    Plaintiffs,

v.                                                        Civil Action No. 3:15-cv-213-DJH

ADVANCED HCS LLC, et al.,                                                    Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs PharMerica Corporation and PharMerica East had a contract to provide prescription medications and pharmaceutical services to skilled nursing home facilities (SNFs) in Texas. (Docket No. 1-2, PageID # 587) Defendants Advanced HCS and Texas Operations Management managed the SNFs. (*Id.*) In 2010, the SNFs filed suit against PharMerica in the U.S. District Court for the Eastern District of Texas, alleging that their contract with PharMerica was unenforceable. (D.N. 54-3, PageID # 1218–19) Two years later, the parties settled and executed a Memorandum of Understanding. (*Id.*) In 2015, PharMerica filed the instant action claiming that the SNFs had fallen behind on their payments to PharMerica and that Advanced HCS and Texas Operations attempted to sell a number of the SNFs to avoid payment. (D.N. 1-2, PageID # 587–89) The defendants have moved to dismiss for lack of personal jurisdiction and improper venue, or alternatively, to transfer the case to the Eastern District of Texas. (D.N. 53; D.N. 54) The plaintiffs filed a motion to deem matters relating to the control and capitalization of the defendant entities admitted. (D.N. 62) Because the Court finds that personal jurisdiction is lacking and that transfer is in the interest of justice, the Court will deny the motion to dismiss but grant the defendants' motion to transfer the case to the Eastern District of Texas. The Court will deny as moot the plaintiffs' motion to deem matters admitted.

1

## I.      BACKGROUND

Plaintiffs PharMerica Corporation and PharMerica East, Inc. are related pharmaceutical supply companies headquartered in Louisville, Kentucky, that "provid[e] prescription medications to nursing home patients and provid[e] pharmacy consulting and other urgent care pharmaceutical services to operators of nursing homes."  (D.N. 1-2, PageID # 587; D.N. 12, PageID # 223)  PharMerica provided medications and pharmacy services to twenty-nine SNFs in Texas pursuant to Pharmacy Service Agreements (PSAs).  (D.N. 1-2, PageID # 587)  Notably, in the event of a dispute, the PSAs provided for "mandatory arbitration to occur in Louisville, Kentucky."  (*Id*.)  All of the SNFs at issue are owned either by Defendants Eliezer Scheiner and Teddy Lichtschein jointly or by Scheiner alone.  (*Id*., PageID # 1216)

According to the defendants, Peter Licari and Michael D'Arcangelo owned and operated PharMaster, L.P., an institutional pharmacy that operated SNFs in Texas.  (D.N. 54-3, PageID # 1214)  Licari and D'Arcangelo owned and operated SNFs as well.  (*Id.*, PageID # 1215) The defendants allege that in 2008, Licari and D'Arcangelo wanted to sell PharMaster but were having difficulty finding a buyer; therefore, they directed their SNFs to enter into new PSAs with terms that were "much more favorable to PharMaster."  (*Id*., PageID # 1214)  The defendants claim that the new PSAs added the arbitration provision that required arbitration in Louisville, Kentucky, to appeal to PharMerica, which is headquartered in Louisville, Kentucky.  (*Id*., PageID # 1214–15)  The defendants state that ten days "after the new PSAs were executed, PharMaster was acquired by PharMerica."  (*Id*., PageID # 1215)

The next year, Licari and D'Arcangelo wanted to sell the SNFs they owned and discussed a possible acquisition with Defendant Eliezer Scheiner.  (*Id*.)  "During these discussions, Mr.

Scheiner was informed of the requirement to assume the PSAs as part of the acquisition." (*Id.*) Eventually, Defendants Scheiner and Teddy Lichtschein acquired the SNFs.

"[N]ew Texas limited liability companies were formed to serve as the legal operating entities for each of the twenty-nine (29) SNFs in Texas." (*Id.*)  The defendants assert that "[t]hese entities would operate the SNFs but rent (through formal agreements) the hard assets from separate 'Landlord' entities created to own those assets." (*Id.*, PageID # 1215–16)  The SNFs were managed by Defendant Advanced HCS. (*Id.*)  Advanced HCS states that it provides limited administrative services to SNFs and rehabilitation facilities in Texas. (D.N. 53-1, PageID # 1050)  "The sole members of Advanced HCS are Eliezer Scheiner and Teddy Lichtschein . . . , both of whom are residents of New York." (*Id.*)  Meanwhile, Defendant Texas Operations Management was formed as a Texas limited liability company to "serve as the corporate manager for each of the SNF Defendants" and Advanced HCS. (D.N. 54-3, PageID # 1215–16; D.N. 61, PageID # 1533)  According to the defendants, "Texas Operations' role was to sign corporate documents and, in some cases, negotiate and execute certain contracts on behalf of the SNF Defendants." (D.N. 54-3, PageID # 1215–16)

In 2010, several months after Advanced HCS took over management of the facilities, the SNFs filed suit against PharMerica in the U.S. District Court for the Eastern District of Texas seeking to terminate the PSAs. (D.N. 54-3, PageID # 1218)  The parties reached a settlement in 2012, resulting in a Memorandum of Understanding (MOU). (*Id.*, PageID # 1218–19)  The MOU provides that the SNFs were to enter into new PSAs within three months. (D.N. 1-2, PageID # 598–99)  The plaintiffs allege that the defendants failed to execute new PSAs and thus the original PSAs remained in place. (*Id.*, PageID # 599)  The defendants, on the other hand, claim that the settlement terminated the PSAs. (D.N. 14-1, PageID # 291)

3

According to the plaintiffs, in mid-2014, the SNF defendants began falling behind on their payments to PharMerica.  (D.N. 54-3, PageID # 588, 599)   The plaintiffs allege that Advanced HCS "and its affiliate, [D]efendant Texas Operations Management LLC" attempted to avoid payment and terminate the PSAs by selling thirteen of the facilities.  (*Id.,* PageID # 588) The plaintiffs contend that the sales occurred without proper notice to PharMerica and in violation of the PSAs.  (*Id*, PageID # 599)

PharMerica filed the instant action in Jefferson County, Kentucky Circuit Court against thirty-eight defendants, requesting, among other things, a declaratory judgment that the PSAs were not terminated and are binding on all defendants and their successors and an order compelling arbitration in accordance with the PSAs.  (*Id*., PageID # 607)   The defendants removed the case to this Court and then filed motions to dismiss for lack of personal jurisdiction and improper venue, or alternatively, to transfer the case to the Eastern District of Texas.  (D.N. 1; D.N. 12; D.N. 13; D.N. 14; D.N. 15)

The defendants argue that they lack sufficient contacts with Kentucky to establish personal jurisdiction.  (D.N. 14, PageID # 288)   The defendants state that they "all reside in Texas, operate exclusively in Texas and/or conduct substantial business operations in Texas." (*Id*., PageID # 291)   The defendants maintain that they "have not purposefully availed themselves of the privilege of acting in Kentucky at all" because they do not "transact business in Kentucky, perform services in Kentucky, sell products in Kentucky, own property in Kentucky, maintain offices in Kentucky, maintain bank accounts in Kentucky, and/or have ever generated any revenues from Kentucky or generated revenues based on activities in Kentucky." (*Id*.)

Additionally, the defendants argue that "many of the same issues" were previously litigated in the Eastern District of Texas, which was held to be an appropriate venue for the dispute. Furthermore, the defendants assert that because the settlement from that previous litigation terminated the PSAs, the forum selection clause contained in the PSA is no longer enforceable.

The plaintiffs moved for leave to take jurisdictional discovery. (D.N. 21) On March 8, 2016, the Court granted the plaintiffs' motion and allowed ninety days for limited jurisdictional discovery. (D.N. 45) Several disputes arose during the discovery period. (D.N. 47; D.N. 51; D.N. 52) However, on July 29, 2016, the plaintiffs stated that they would not "seek further intervention from the Court" and "submit[ted] that the appropriate next step is to begin the clock on Defendants' responsive pleading per the Court's order of June 23, and proceed to merits adjudication." (D.N. 52, PageID # 1029)

Following the conclusion of jurisdictional discovery, the defendants renewed their motions to dismiss for lack of personal jurisdiction and improper venue, or alternatively, to transfer the case to the Eastern District of Texas. (D.N. 53; D.N. 54)

In response to these motions, the plaintiffs maintain that the Court has personal jurisdiction over the SNF defendants and that the arbitration provision's forum selection clause in the PSAs requires the parties to litigate in Louisville, Kentucky. (D.N. 25, PageID # 703) Additionally, while Advanced HCS and Texas Operations Management were not signatories to the PSAs, the plaintiffs argue that the Court has personal jurisdiction over the remaining defendants under an alter-ego theory of personal jurisdiction. (D.N. 61, PageID # 1529–30) The plaintiffs maintain that Texas Operations Management is a "non-functioning shell entity" and

5

that Advanced HCS "wholly controls the operation of the [SNFs]."  (D.N. 61, PageID # 1533–34)

The plaintiffs also responded by filing a motion to deem matters admitted.  (D.N. 62) The plaintiffs argue that because the defendants violated their discovery obligations under Rule 30 and Rule 34, the Court should deem the following matters admitted "for purposes of personal jurisdiction":

> (*i*) The SNF Defendants and [Advanced HCS] were not capitalized on formation and are not currently capitalized;
>
> (*ii*) Defendants do not maintain proper corporate books and records;
>
> (*iii*) Lichtschein and Scheiner treat the entity Defendants' assets and bank accounts interchangeably and as their own; and
>
> (*iv*) All of the Defendant entities are managed and controlled by Lichtschein and Scheiner, through their "representatives" Ostroff, Lichtman, and Apex.

(D.N. 62-1, PageID # 1960)   Additionally, the plaintiffs request that if the Court holds an evidentiary hearing on personal jurisdiction, the defendants "be prohibited from placing evidence before the Court that contradicts any of those points."  (*Id.*)

## II.   DISCUSSION

### a.  Personal Jurisdiction

The burden is on the plaintiffs to demonstrate that personal jurisdiction exists as to the defendants.  *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  To make this showing, a plaintiff "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts" demonstrating the Court's jurisdiction.  *Id.*  When presented with a motion to dismiss for lack of personal jurisdiction, the Court has three options: (1) "decide the motion upon the affidavits alone," (2) "permit discovery in aid of deciding the motion," or (3) "conduct an evidentiary hearing to resolve any apparent factual questions."  *Id.* (citing *Serras v. First*

6

*Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  "The weight of the plaintiff's burden, however, depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue."  *Serras*, 875 F.2d at 1214.  Where, as here, there has been limited jurisdictional discovery but an evidentiary hearing has not been held, the plaintiffs must make a prima facie showing of personal jurisdiction.  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  The Court will view the evidence in the light most favorable to the plaintiff without "weigh[ing] the controverting assertions" of the defendants.  *Theunissen*, 935 F.2d at 1459.  Dismissal is proper only "if all of the specific facts . . . alleged" by the plaintiffs "collectively fail[ ] to state a prima facie case for jurisdiction."  *Id.*

### i.  Whether the PSAs Establish Personal Jurisdiction

The plaintiffs first argue that the PSAs establish personal jurisdiction.  (D.N. 61, PageID # 1522–27)  According to the plaintiffs, because the dispute-resolution clause in the PSAs requires arbitration in Louisville, Kentucky, the clause moots the defendants' personal-jurisdiction objections.  (*Id.*, PageID # 15222–23)  The plaintiffs argue that the SNFs are bound to this forum selection as signatories to the PSAs.  (*Id.*, PageID # 1524–26)

The defendants respond that the Court lacks personal jurisdiction over them.  (D.N. 53-1, PageID # 1055; D.N. 54-3, PageID # 1221)  First, the defendants contend that the PSAs cannot establish personal jurisdiction because the SNF defendants signed only the Assignment and Assumption Agreements and none of the defendants signed the PSAs.  (D.N. 54-3, PageID # 1223)  Second, in the alternative, the defendants argue that the PSAs were terminated by the settlement agreement from the Texas litigation.  (*Id.*, PageID # 1223)  The defendants state that the Memorandum of Understanding (MOU) and corresponding Rider superseded the PSAs and contain no forum-selection clause.  (*Id.*)  Third, the SNF defendants assert that even if the PSAs

were not terminated, the plaintiffs waived their ability to enforce the forum-selection provision when they previously litigated these issues in Texas.  (*Id*., PageID # 1224)

While the SNF defendants argue that they did not sign the PSAs, they acknowledge that "they assumed rights under [the PSAs] which included a provision setting forth Louisville as the location of any arbitration between the parties under the agreements."  (D.N. 54-3, PageID # 1212)  Regardless of whether the defendants signed the PSAs themselves or the assignment and assumption agreements, the forum-selection clause at issue is the same.  Because "[a] forum selection clause confers personal jurisdiction on a court over only those disputes that the parties agreed to litigate in that forum," if the PSAs are valid and enforceable, then the Court has personal jurisdiction over the SNF defendants.  *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 528 (6th Cir. 2013).

The Court must therefore determine whether the MOU and Rider terminated the PSAs. Because this is a question of contract interpretation, the Court will "look to the language of the agreement to determine the parties' intent."  *VIBO Corp.*, 669 F.3d at 688–89; *Caudill Seed & Warehouse Co. v. Houston Cas. Co.*, 835 F. Supp. 2d 329, 332–33 (W.D. Ky. 2011) (quoting *Logan Fabricom, Inc. v. AOP P'ship LLP*, 2006 WL 3759412, *2 (Ky. Ct. App. December 22, 2006)).  If the Court finds the contract to be clear and unambiguous, the contract "'will be enforced strictly according to its terms, and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.'"  *Caudill Seed & Warehouse Co.*, 835 F. Supp. 2d at 332–33 (quoting *Frear v. P.T.A. Indus., Inc.,* 103 S.W.3d 99, 106 (Ky. 2003)).  "'A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations.'" *Id.* (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)).

8

The MOU from the Texas litigation states, in relevant part:

1. The parties will negotiate in good faith and execute a final settlement agreement (the "Final Settlement Agreement") which is consistent with the terms and conditions set forth herein.

2. The existing Pharmacy Services Agreements ("Existing PSAs") shall be terminated effective no later than December 31, 2012 and 34 of the Plaintiffs (which represents all of the Plaintiffs nursing homes or facilities currently receiving goods and service from PharMerica plus Mesquite NH SNF LLC) shall enter into new Pharmacy Services Agreements ("PSAs") with PharMerica which PSAs shall expire no later than the date that the Existing PSAs were to expire. The form of the Existing PSAs shall be utilized in connection with creating the PSAs and the existing pricing schedules shall be used except to the extent that modification of either the forms or pricing has been agreed to herein or in the Final Settlement Agreement. In no event shall any term or pricing schedule of the PSAs be less favorable than the corresponding term or pricing schedule of the Existing PSAs.

(D.N. 54-15, PageID # 1415)

The Rider to the MOU provides:

1. Each Party represents and warrants that the terms of the MOU are binding and enforceable against all Parties thereto with or without the execution of a "Final Settlement Agreement[."]

2. Each party waives any defense to the enforceability of the MOU.

(D.N. 54-16, PageID # 1424)

The Court finds that two interpretations of the MOU and Rider are plausible. The MOU states that the existing PSAs were terminated as of December 31, 2012. (D.N. 54-15, PageID # 1415) Conversely, the MOU also intended that the parties would "enter into new" PSAs, and the form of the new PSAs was to be based on the existing PSAs. (*Id*.) Because the MOU states that the PSAs "shall be terminated . . . *and* [the parties] shall enter into new [PSAs]," it is not clear what PSA was to govern if the parties did not agree to new PSAs. (D.N. 54-15, PageID # 1415 (emphasis added)) The plaintiffs argue that the Rider addresses this issue in paragraph one when it states that "the terms of the MOU are binding and enforceable against all Parties thereto with

9

or without the execution of a 'Final Settlement Agreement.'" (D.N. 54-3, PageID # 1223) However, this interpretation would assume that "Final Settlement Agreement" and new PSAs are the same, and the Court finds nothing in the record to affirmatively support this assumption. (*Id.*)  Therefore, viewing the evidence in the light most favorable to the plaintiffs, the Court will assume that the PSAs were not terminated by the MOU.  *See Theunissen*, 935 F.2d at 1459.

Assuming the forum-selection clause applies, the next question is whether the plaintiffs waived this provision when they previously litigated claims in Texas.  (D.N. 54-3, PageID # 1224)  "The Supreme Court has stated that, in light of present-day commercial realities, a forum selection clause in a commercial contract should control absent a strong showing that it should be set aside." *KFC Corp. v. Wagstaff*, 502 B.R. 484, 489 (W.D. Ky. 2013) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  "Waiver, however, is held correctly to be a voluntary and intentional surrender or relinquishment of a known right."  *Overlook Terraces, Ltd. v. Tamko Bldg. Prod., Inc.*, No. 3:14-CV-00241-CRS, 2015 WL 9906298, at *5 (W.D. Ky. May 21, 2015) (citing *Conseco Fin. Servicing Grp. v. Wilder,* 47 S.W.3d 335, 344 (Ky. Ct. App. 2001)).  "[A] party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010).

With respect to the first factor, the Second Circuit has held and "[o]ther circuits seem to agree that waiver can only occur when a party has previously litigated the same claims it now seeks to arbitrate." *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997). "Finding waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated *any* issue relating to the

underlying contract containing the arbitration clause." *Id*.  In other words, for PharMerica to have waived the forum-selection clause in this case, the claims must be the same as those litigated previously in Texas.  *See id*.

> The Eastern District of Texas summarized the claims in that litigation as follows:
>
> In 2010, Plaintiffs filed suit against PharMerica as the successor in interest of PharMaster. Plaintiffs seek a declaratory judgment that the pharmacy services agreements are void on the grounds of illegality. The agreements allegedly violate the Anti–Kickback Statute, the False Claims Act, Texas Penal Code § 32.43, and public policy. Second, Plaintiffs seek to recover for PharMerica's breach of warranties and representations in the pharmacy services agreements. Finally, Plaintiffs allege breach of the pharmacy service agreements on the grounds that PharMerica has failed to fully perform.
>
> On October 24, 2011, PharMerica filed an answer to Plaintiffs' Second Amended Complaint and asserted counterclaims. PharMerica seeks declaratory judgment that the pharmacy services agreements and the assignment and assumption agreements are valid, legal, and enforceable. PharMerica also brings a claim for "abuse of process" on the grounds that "Plaintiffs filed the Lawsuit for the improper purpose of obtaining leverage in an effort to renegotiate the Pharmacy Services Agreements . . . ." Finally, PharMerica counterclaims for attorneys' fees.

*Pittsburg SNF LLC v. PharMerica E., Inc.*, No. 2:10-CV-363-JRG-RSP, 2012 WL 4509753, at *1 (E.D. Tex. July 19, 2012), *report and recommendation adopted*, No. 2:10-CV-363-JRG-RSP, 2012 WL 4508127 (E.D. Tex. Sept. 28, 2012) (internal citations omitted).

In the instant action, PharMerica seeks a declaratory judgment that the PSAs are valid and binding and an order compelling arbitration in accordance with the PSAs.  (D.N. 1-2, PageID # 601)  The plaintiffs also seek an order requiring the SNF LLCs and Texas Operations to execute new PSAs.  (*Id*., PageID # 602)  Additionally, PharMerica claims that the SNF LLCs and Texas Operations breached the PSAs and MOU by failing to make payments, attempting to wrongfully terminate the PSAs, failing to execute new PSAs, and "failing to cause the Transferee Defendants to execute assignment and assumption agreements as a condition of transfer."  (*Id*., PageID # 603)  Relatedly, PharMerica alleges that the defendants were unjustly enriched because

11

PharMerica was not compensated for the goods and services it provided. (*Id.*) Next, the plaintiffs assert that "Defendants Lichtschein, Scheiner, [Advanced HCS, and] Texas Operations Managements LLC" tortiously interfered with the business relations between PharMerica and the SNFs. (*Id.*, PageID # 604) The plaintiffs claim that Lichtschein and Scheiner also committed civil conspiracy by acting in concert to "accomplish a common unlawful purpose as set forth in the Counts above." (*Id.*) Finally, the plaintiffs allege that the defendants attempted to evade liability by structuring the companies and transactions to "mask actual assets and thwart recovery of funds and assets." (*Id.*, PageID # 605)

In response, the defendants argue that the PSAs are unenforceable, unlawful, and against public policy. (D.N. 54-3, PageID # 1219) The defendants state that they will likely assert the following counterclaims against PharMerica: breach of the PSAs, breach of warranty, and fraudulent inducement. (D.N. 54-3, PageID # 1219) According to the defendants, the claims raised by each side in this case are "the exact same claims" that were litigated in the Texas litigation. (*Id.*; D.N. 69, PageID # 2646–67)

In reviewing both cases, the Court finds that the claims raised in the instant action were previously raised in the Texas litigation. At its core, as in the Texas litigation, PharMerica's instant complaint argues that the PSAs are valid and that the defendants have not performed under the PSAs. (D.N. 1-2, PageID # 601–05; D.N. 69, PageID # 2646–67) Additionally, PharMerica alleges that the defendants have violated the settlement agreement, which "is nothing more than a state law breach of contract claim." (D.N. 1-2, PageID # 601–05) Judge Andrew S. Hanen & Jeffrey M. Benton, *The Enforceability of Settlement Agreements*, 40 The Advoc. (Texas) 69, 70 (2007); *see also GATX Corp. v. Appalachian Fuels, LLC*, No. 09-41-DLB, 2011 WL 4015573, at*1–2 (E.D. Ky. Sept. 9, 2011) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511

12

U.S. 375, 377–81 (1994)).  While the defendants have not answered the plaintiffs' complaint, their motions to dismiss indicate that they will raise essentially the same claims they asserted in the Texas litigation as counterclaims in this case, including breach of contract, breach of warranty and unenforceability.  (D.N. 69, PageID # 2646–47)  Therefore, the Court concludes that the plaintiffs waived the forum-selection clause by previously litigating these claims in Texas and thus cannot establish personal jurisdiction over the defendants under this clause.

### ii.  Kentucky's Long-Arm Statute

Alternatively, the plaintiffs argue that the SNF defendants are subject to personal jurisdiction under Kentucky's long-arm statute.  The plaintiffs contend that by contracting with PharMerica, a Louisville-based company, the SNF defendants "benefited from doing millions of dollars of business with a Kentucky-based corporation."  (D.N. 61, PageID # 1528)  Furthermore, the plaintiffs state that the SNF defendants have

> (*i*) visited PharMerica executives in Kentucky to discuss the PSAs and potential litigation; (*ii*) met with PharMerica executives about matters pertaining to the PSAs; (*iii*) interacted with PharMerica employees located in Kentucky about the PSAs via email; and (*iv*) corresponded with PharMerica in Kentucky, including improperly sending letters terminating the relationship.

(*Id*. (internal citations omitted))

The SNFs argue that they have not transacted business in Kentucky and contend that their only connection to Kentucky is a single agreement that they entered into with "Delaware companies headquartered in Kentucky and directed payments which may have ultimately ended up in PharMerica's hands in Kentucky."  (D.N. 54-3, PageID # 1226)  The SNF defendants argue that executing a contract is not sufficient to establish personal jurisdiction.  (*Id*., PageID # 1227 (citing *KFC Corp.*, 502 B.R. at 487))  Additionally, the SNF defendants state that PharMerica

provided its goods and services to the defendants in Texas and the defendants have not "regularly done or solicited" any other business in Kentucky.  (*Id*., PageID # 1230)

Advanced HCS similarly argues that it lacks "jurisdictional contacts with Kentucky." (D.N. 53-1, PageID # 1050)  Advanced HCS states that its "conducts its business operations . . . exclusively in Texas" and "does not conduct business of any kind in Kentucky."  (*Id*.)  For support, Advanced HCS states that it is not registered to do business in Kentucky, does not own or operate any facilities in Kentucky, does not advertise or market in Kentucky, "has never been a party to contracts with entities or individuals located in Kentucky, and has never generated any revenue originating from Kentucky."  (*Id*., PageID # 1050–51)  Finally, Advanced HCS argues that personal jurisdiction over it in Kentucky cannot arise from

> the unsystematic circumstances that: (1) on two occasions, the Chief Operating Officer of Advanced HCS, Mary Pfeifer, signed letters on behalf of certain of the SNF Defendants that were addressed to PharMerica in Louisville, . . . and (2) on isolated occasions, representatives of Advanced HCS responded to emails from PharMerica employees who were located in Louisville.

(*Id*., PageID # 1051)

"Federal Rule of Civil Procedure 4(k)(1)(A) states that personal jurisdiction exists over any properly-served defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'"  *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 739 (6th Cir. 2003) (quoting Fed. R. Civ. P. 4(k)(1)(A)).  In Kentucky, the Court must first look to the Commonwealth's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories."  *Caesars Riverboat Casino, LLC v. Beach,* 336 S.W.3d 51, 57 (Ky. 2011).  If the statute is applicable, the Court must then apply the traditional test "to determine if

14

exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.*

Kentucky's long-arm statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [t]ransacting any business in this Commonwealth."   Ky. Rev. Stat. § 454.210(2)(a).  *Caesars* clarified that "Kentucky's long-arm statute is narrower in scope than the federal due process clause."  *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628 (6th Cir. 2016) (citing *Caesars*, 336 S.W.3d at 55–57).  "There is little case law interpreting the meaning of 'transacting business' . . . following *Caesars*, but, 'even before *Caesar[s]* narrowed the scope of Kentucky's long arm statute, Kentucky courts have required a course of direct, affirmative actions within a forum that result in or solicit a business transaction.'"  *Gentry v. Mead*, No. CV 16-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016) (quoting *Modern Holdings, LLC v. Corning, Inc.*, No. 13-CV-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31, 2015)).  "[E]ven under the outer bounds of due process, 'the mere existence of a contract . . . is insufficient to confer personal jurisdiction.'"  *Cox*, 647 F. App'x at 628 (citation omitted) (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).

For example, in *Gentry*, the court held that "[e]ntering into a Note, by itself, does not establish the minimum contacts needed for jurisdiction."  2016 WL 6871252 at *3.  The court explained that the defendant "never traveled to Kentucky," the note was not executed in Kentucky, and the defendant's "only contact with Kentucky was in entering into the Note with Gentry, who resided there."  *Id*.  Therefore, the Court found that the defendant had not "transacted business" in Kentucky and his contacts were insufficient to establish personal jurisdiction.  *Id*.

15

Similarly, in *Envirometric Process Controls, Inc. v. Adman Electric, Inc*., the plaintiff, a Kentucky corporation, subcontracted with the defendant, a Tennessee corporation, to provide materials and services in Tennessee.   No. 3:12CV-62-S, 2012 WL 4023789, at *2 (W.D. Ky. Sept. 12, 2012).   The Court held that the defendant had not "transact[ed] business" in Kentucky because he was not licensed to do business in Kentucky; he had no physical presence in the Commonwealth; the contract was performed outside Kentucky; and the contract was negotiated over phone and email.  *Id*. at * 2–3.

In *Modern Holdings*, the court held that a defendant corporation had not "transacted business" in Kentucky because it had no offices, employees, manufacturing facilities, or agent for service of process in the Commonwealth.   2015 WL 1481443 at *7.   Additionally, the corporation was never licensed to do business in Kentucky.  *Id*.

In contrast, the court in *Caesars* found that the defendant "transacted business" in Kentucky.  336 S.W.3d at 53.  In that case, the plaintiff was injured on a casino boat owned by an Indiana corporation and docked in Indiana.  *Id*. at 52–53.  However, because the defendant advertised heavily in Kentucky, including "mass media and billboard advertising in Kentucky, direct mail advertising to Kentucky residents, preferred customer incentives directed to Kentucky residents, and substantial civic and charitable activities in the Commonwealth," the court found that there was personal jurisdiction over the defendant in Kentucky.  *Id*. at 58.

In this case, the Court finds that the defendants have not "transact[ed] business" in Kentucky.   *See* Ky. Rev. Stat. § 454.210(2)(a).   Similar to the defendants in *Gentry*, *Envirometric*, and *Modern Holdings*, the only contact the defendants have with Kentucky is entering into a contract with a party located in Kentucky.  *See Gentry*, 2016 WL 6871252, at *3; *Envirometric*, 2012 WL 4023789, at *2; *Modern Holdings*, 2015 WL 1481443, at *7.  As in

*Envirometric* and *Modern Holdings*, the defendants were not licensed to do business in Kentucky, had no physical presence in Kentucky, and performed the contracts at issue in Texas. *See Envirometric*, 2012 WL 4023789, at *2–3; *Modern Holdings*, 2015 WL 1481443, at *7. Also, unlike the defendants in *Caesars*, the defendants have not sought business in Kentucky. *See* 336 S.W.3d at 52–53.

Even viewing the plaintiffs' argument in the most favorable light, they have not established a *prima facie* case of personal jurisdiction.  First, while the plaintiffs assert that the defendants traveled to Kentucky to discuss the PSAs, in his deposition, Lichtman stated that the only time he visited Kentucky was to discuss potential litigation in Texas, which is not sufficient to establish personal jurisdiction.  (D.N. 61-3, PageID # 1589)  *See Gentry*, 2016 WL 6871252, at *3.  Second, the plaintiffs state that the defendants "met with PharMerica executives about matters pertaining to the PSAs"; however, that meeting took place in New York.  (D.N. 61-4, PageID # 1618)  Additionally, the plaintiffs contend that the defendants corresponded with PharMerica employees in Kentucky via email and letters.  (D.N. 61, PageID # 1528) However, as in *Envirometric*, these communications are not sufficient to establish that the defendants "transacted business" in Kentucky.  *See* 2012 WL 4023789, at *2.  In sum, the Court concludes that the defendants have not "transacted business" in Kentucky.

Because Kentucky's long-arm statute is not satisfied, the Court need not consider the defendant's due process rights.  *See Caesars*, 336 S.W.3d at 57.  The plaintiffs have not established personal jurisdiction over the defendants in Kentucky.

### iii.  Alter-Ego Theory

The plaintiffs argue that personal jurisdiction over the SNF defendants "yields jurisdiction over the remaining defendants under established alter ego law." (D.N. 61, PageID #

1529–30)  However, this theory requires that the plaintiffs first establish personal jurisdiction over the SNFs.  Because this prerequisite is not met, the Court will not address the plaintiffs' alter-ego theory of personal jurisdiction.

### b.  Transfer

The defendants argue that the case should be dismissed, or alternatively, transferred for lack of personal jurisdiction and improper venue.  (D.N. 53; D.N. 54)  The plaintiffs respond that because "[v]enue in removed cases is governed solely by § 1441(a)" and because this case was filed in state court in Louisville, Kentucky, the U.S. District Court for the Western District of Kentucky is the only proper venue under § 1441(a).  (D.N. 61, PageID # 1548–49 (citing *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 534 (6th Cir. 2002)).

However, in *Kerobo*, as in the instant action, "[t]he defendants properly removed this case to federal court; they then moved to dismiss for improper venue or, alternatively, to transfer . . . ."  285 F.3d at 538–39.  The Sixth Circuit explained:

> It is true that here, the motion to dismiss was made pursuant to Rule 12(b)(3), without specific reference to 28 U.S.C. § 1406(a). However, a Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements. The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue. Section 1406(a) applies only where venue is improper. *Van Dusen,* 376 U.S. at 634, 84 S.Ct. 805 ("[Section] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, [section] 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."). As we previously concluded, venue in Michigan is not improper in this case, and the dismissal under Rule 12(b)(3) must be reversed. As was the case in *Ricoh,* we are left with the § 1404(a) motion.

*Id*.  In other words, once it is established that a case was properly removed under § 1441, a court may further consider whether venue is proper under either § 1404 or § 1406.  *Id*.  Given that this

case has the same procedural posture, the Court will similarly proceed to analyze venue under § 1404 or § 1406. *See id*.

A district court has authority to transfer a case under either 28 U.S.C. § 1404 or 28 U.S.C. § 1406. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993). "A transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants." *Id*. (citing *Martin v. Stokes,* 623 F.2d 469, 474 (6th Cir. 1980)). "Unlike section 1404(a), however, section 1406(a) does not require that the district court have personal jurisdiction over the defendants before transferring the case." *Id*. (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463 (1962)).

In this case, for the reasons explained above, the Court lacks personal jurisdiction; therefore, the Court finds that section 1406(a) applies to the question of transfer. *See id*. That section provides that a Court may dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. "Section 1631 also applies to such actions." *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009). Section 1631 provides that if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought. . . . ." 28 U.S.C. § 1631. "A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) transfer would not be in the interest of justice." *Jackson*, 421 F. App'x at 483 (quoting *Roman v. Ashcroft,* 340 F.3d 314, 328 (6th Cir. 2003)) (internal quotation marks omitted).

### i. Where Case Could Have Been Brought

The Court must first determine whether the case could have been brought in the Eastern District of Texas, as the defendants contend. "The general venue statute, 28 U.S.C. § 1391, sets forth the requirements for proper venue." *Sechel Holdings, Inc. v. Clapp*, No. 3:12-CV-00108-H, 2012 WL 3150087, at *2 (W.D. Ky. Aug. 2, 2012). Section 1391(b) provides:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The defendants argue that the venue is proper in the Eastern District of Texas because the parties have previously litigated many of these same claims in that district. (D.N. 54-3, PageID # 1242) Additionally, the defendants are all Texas organizations located in Texas, and the contracts at issue were performed in Texas. (D.N. 14, PageID # 291) The plaintiffs do not dispute that the case could have been brought in the Eastern District of Texas. (*Id.*) Instead, they maintain that the Western District of Kentucky is also a proper venue because of the forum-selection clause in the PSAs and pursuant to 28 U.S.C. § 1441. Because the Court has already addressed these arguments, it need not visit them here. The Court finds that the action could have been brought in the Eastern District of Texas.

### ii.  Interests of Justice

Next, the Court considers whether transferring the case to the Eastern District of Texas serves the "interests of justice."  *See* 28 U.S.C. §§ 1406, 1631.  "The long-standing authority on the transfer of misfiled complaints is the Supreme Court's opinion in *Goldlawr v. Heiman*." *Stanifer v. Brannan*, 564 F.3d 455, 458 (6th Cir. 2009) (citing *Goldlawr*, 369 U.S. 463).   In interpreting *Goldlawr*, the Sixth Circuit explained "that transfer was appropriate when plaintiffs 'had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn.'"  *Id.* (quoting *Goldlawr*, 369 U.S. at 466).  In other words, "[i]f Plaintiff's mistake were one easy to commit, the penalty of dismissal might be so disproportionate to the wrong that it would have to be reversed, as a clear abuse of discretion." *Id.* (alterations omitted) (quoting *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir.1986)).

The defendants argue that "a substantial part of the events giving rise to this dispute occurred in Texas."  (D.N. 53-1, PageID # 1068)  The defendants state that all of the SNFs are located in Texas, the previous litigation proceeded in Texas, and all the defendants "appear to be subject to personal jurisdiction in Texas."  (*Id.*)  Alternatively, the defendants argue that Texas is the more convenient forum under 28 U.S.C. § 1404.  (*Id.*)  The plaintiffs maintain that the forum-selection clause should control pursuant to § 1404; they do not address 28 U.S.C. § 1406.  (D.N. 61, PageID # 1548–50)

In this case, the plaintiffs had a colorable argument for personal jurisdiction in the Western District of Kentucky.  *See Stanifer*, 564 F.3d 460.  As explained above, the PSAs contained a forum-selection clause that could have established personal jurisdiction.  *Traton News*, 528 F. App'x at 528).  Additionally, as evidenced by the Court's lengthy analysis, the

21

plaintiffs made a reasonable argument that the defendants "transacted business" in Kentucky and thus satisfied Kentucky's long-arm statute.

The Court further finds that "a transfer would also be in the 'interest of justice' because a transfer would save the parties the time and expense associated with refiling." *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 285 (D.D.C. 2015) (citing *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 78 (2003)). In addition, the parties have previously litigated similar claims in the Eastern District of Texas. Therefore, the Court concludes that it is in the interest of justice to transfer the case to the Eastern District of Texas pursuant to 28 U.S.C. § 1406.[1]

### c.  Motion to Deem Matters Admitted

Because the Court lacks personal jurisdiction and will transfer the case to the Eastern District of Texas, the Court will not consider the plaintiffs' motion to deem matters admitted. The motion will be denied as moot. (D.N. 62) *See Rice v. Karsch*, 154 F. App'x 454, 464 (6th Cir. 2005); *PharMerica Corp. v. Advanced Healthcare Sols., LLC*, No. CIV.A.309CV397H, 2009 WL 3248014, at *1 (W.D. Ky. Oct. 6, 2009).

## III.   CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

---

[1] Had the Court concluded that personal jurisdiction existed and thus 28 U.S.C. § 1404 was applicable, it would still reach the same conclusion regarding transfer because, as discussed earlier, the defendants are based in Texas (D.N. 14, PageID # 291); the parties previously litigated in Texas (D.N. 54-3, PageID # 1224); the contracts at issue were performed in Texas (D.N. 14, PageID # 291); and the defendants are subject to personal jurisdiction in Texas (D.N. 53-1, PageID # 1068).

(1)     The defendants' motions to dismiss, or alternatively, transfer (D.N. 53; D.N. 54)

are **GRANTED in part** and **DENIED in part**.

(2)     This case is **TRANSFERRED** to the United States District Court for the Eastern

District of Texas.

(3)     The plaintiffs' motion to deem matters admitted (D.N. 62) is **DENIED as moot**.

March 6, 2017

**David J. Hale, Judge**
**United States District Court**

23